**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERNEST W. STEUDEL | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | NO. 12-6397 |

AND NOW, this          day of                    , 2014, it is hereby **ORDERED**

that Judgment is **ENTERED** in favor of Defendant Carolyn W. Colvin, Acting Commissioner of

the Social Security Administration, and against Plaintiff Ernest W. Steudel.

It is so **ORDERED**.

**BY THE COURT**:

_____
MITCHELL S. GOLDBERG, J.



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNEST W. STEUDEL | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | NO. 12-6397 |
| Defendant | | |

**AND NOW**, this           day of                     , 2014, after careful review and independent consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review, Defendant's Response thereto and review of the Report and Recommendation of Carol Sandra Moore Wells, Chief United States Magistrate Judge, it is hereby **ORDERED** that:

      1.    The Report and Recommendation is APPROVED and ADOPTED; and

      2.    The Plaintiff's Request for Review is DENIED.

It is so **ORDERED**.

                                             **BY THE COURT**:

                                           _____
                                           MITCHELL S. GOLDBERG, J.



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ERNEST W. STEUDEL | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | NO: 12-6397 |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

CAROL SANDRA MOORE WELLS                    April 29, 2014
CHIEF UNITED STATES MAGISTRATE JUDGE

Ernest W. Steudel ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3) of the final decision of the Commissioner of the Social Security Administration

("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). Plaintiff has

filed, *pro se*, a request for review and supporting brief, to which the Commissioner has responded.

This case was referred to the undersigned by the Honorable Mitchell S. Goldberg, under the authority

of 28 U.S.C. § 636(b)(1)(B), for preparation of a report and recommendation. For the reasons set

forth below, it is recommended that Plaintiff's request for review be DENIED and JUDGMENT

ENTERED in favor of the Commissioner.

### I.    PROCEDURAL HISTORY[1]

On June 23, 2011, Plaintiff protectively applied for DIB and SSI benefits alleging disability,

---

[1]The court has reviewed and considered the following documents in analyzing this case: Plaintiff, Ernest W. Steudel's Brief and Statement of Issues in Support of Request for Review, Defendant's Response to Request for Review by Plaintiff and the administrative record ("R."), including all exhibits thereto.

since January 19, 2011,[2] as a result of depression and fractured vertebrae in his lower back. (R.148-161, 177, 207). After benefits were denied initially, on August 24, 2011, (R. 82-91), Plaintiff requested and was granted an administrative hearing. (R. 98-99, 118-138). On February 28, 2012, Plaintiff, represented by counsel, Ms. Barbara H. Beringer, and Vocational Expert ("VE") Ms. Patricia A. Verser, testified before Kenneth Bryant, Administrative Law Judge ("ALJ").[3] (R. 30-63). On March 5, 2012, ALJ Bryant, using the sequential evaluation process for disability,[4] issued an unfavorable decision that found Plaintiff to be not disabled. (R. 24). On September 7, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's ruling the final decision of the Commissioner. (R.1-5).

---

[2]At the February 28, 2012 administrative hearing, Plaintiff, through counsel, amended his onset date of disability to January 9, 2011, *see* (R. 48-50), the date he believed his back injury occurred. However, it was later confirmed that his injury occurred on January 19, 2011; thus, this is the actual amended onset date of his disability. *See* (R. 15).

[3]The court notes that the transcript of the February 28, 2012 administrative hearing transcript incorrectly identifies VE Patricia A. Verser. *See* (R. 28-30).

[4]The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b); 416.920(b).

> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c).

> 3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d); 416.920(d).

> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f); 416.920(f).

> 5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g); 416.920(g).

## II.   FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on December 5, 1964, was forty-six years old and a younger person[5] on January 19, 2011, his alleged onset date of disability.  (R.15, 48-50).  He is a high school graduate and has prior work experience as a manager of a storage facility, excavator and estimator and project manager of a construction company.  (R. 42, 54-55).  Plaintiff is divorced and receives welfare benefits and food stamps; he resides in a one story home with a friend, Mr. William Weaver.  (R. 33-34, 187).

B.   Administrative Hearing Testimony

At the February 28, 2012 administrative hearing, Plaintiff testified that, in January of 2011, he injured his lower back when he slipped and fell on ice in the driveway of his residence.  (R. 34-35, 43).  He stated that he has constant chronic lower back pain, as well as, intermittent pain that travels from his hips down his legs; he rates the intensity of his pain when medicated as a five on a scale of one to ten and a nine without pain medication.  (R. 34-35, 51).  Twice weekly he experiences sharp, excruciating pain in both legs that causes him to lose his balance and fall.  (R. 51).  During a hospital stay, he fractured two of his ribs when his legs gave out on him and he fell.  (R. 51).  Although walking and twisting intensify his pain, sitting does not.  (R. 52). Plaintiff complained that the constant pain limits his concentration and ability to focus.[6]  (R. 52).

---

[5]An individual under 50 years old is considered a " younger person."  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

[6]At the hearing Plaintiff testified that he was in pain, but he did not take his pain medication prior to the hearing, because he did not want the narcotic medication to impair his thought process.  (R. 52).

-3-

Plaintiff testified that he was prescribed and took: Percocet,[7] Celexa,[8] Metoprolol,[9] Thiamine,[10] an antibiotic, Klor-Con (a potassium supplement) and a daily multivitamin. (R. 35). He complained that Percocet does not fully relieve his pain and its side-effect is impaired judgment. (R. 36). Plaintiff testified that he has low potassium which causes confusion, lethargy and weakness. (R. 45-46). He experiences short-term memory loss. (R. 38). Although Plaintiff takes medication to treat his depression, he does not attend therapy sessions or other psychiatric treatment. (R. 37). On January 19, 2012, Plaintiff ceased alcohol consumption; he now attends Alcohol Anonymous meetings. (R. 44). He is serving five years of probation following a January 2011 incarceration for receiving stolen property. (R. 44-45).

During the day, Plaintiff naps on the couch for up to three hours at a time. (R. 43). He watches television and prepares his own meals. (R. 43). Plaintiff can walk only two city blocks before needing to stop and rest; he walks with the assistance of a cane that was prescribed by his doctor. (R. 36). He can stand for up to twenty minutes. (R. 36). Plaintiff testified that he can sit for up to an hour before needing to shift positions and can lift up to ten pounds. (R. 36-37). He has no difficulty raising his arms above his shoulders or grasping and holding objects. (R. 36-37). Plaintiff's doctor restricted him from driving, because his legs give out on him. (R. 38-39). He grocery shops every two weeks and prepares his own meals. (R. 39-40). Plaintiff does not attend church or have any hobbies. (R. 40, 41). He performs a limited amount of light housework, such

---

[7]Percocet "is used to relieve moderate to severe pain." *See Medline Plus* available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682132.html. Accessed on April 18, 2014.

[8]Celexa "is used to treat depression." *See Medline Plus* available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699001.html. Accessed on April 18, 2014.

[9]Metoprolol "is used alone or in combination with other medications to treat high blood pressure." *See Medline Plus* available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682864.html. Accessed on April 18, 2014.

[10]Thiamine "is a vitamin used by the body to break down sugars in the diet." *See Medline Plus* available at http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682586.html. Accessed on April 18, 2014.

-4-

as cleaning the bathroom; Mr. Weaver performs a majority of the household chores. (R. 40).
Plaintiff is computer literate and can read emails, but he has not done so in over a year. (R. 41).

C.    Vocational Testimony

At the February 28, 2012 administrative hearing, VE Verser categorized Plaintiff's previous
position as a manager of a storage facility as unskilled,[11] light exertional work[12], his position as an
estimator and project manager as skilled,[13] sedentary work,[14] and his work as an excavator as
semiskilled,[15] heavy work.[16] (R. 54-55).

The ALJ asked VE Verser to consider whether a hypothetical person who shared Plaintiff's
age, educational background and work history and can perform light exertional level work, must
refrain from climbing ropes, ladders, scaffolds and crawling, can occasionally balance, stoop, kneel,
and crouch, must avoid hazardous conditions such as hazardous machinery and unprotected heights,
can only occasionally drive of a motor vehicles, has occasional use of a foot pedal or foot controls,
and must avoid exposure to extreme heat or cold could perform Plaintiff's past relevant work, either

---

[11]Unskilled work requires "little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . .[a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a); 416.968(a).

[12]"Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[13]"Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. §§ 404.1568(c), § 416.968(c).

[14]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[15]Semi-skilled work requires "some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[16]"Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

-5-

as he actually performed it or as it is generally performed in the national economy.  (R. 55).  VE Verser opined that such an individual could perform Plaintiff's prior work as manager of a storage facility and as estimator and project manager; the individual could not perform work as an excavator. (R. 55-56).

Next, the ALJ asked VE Verser if the above considered hypothetical individual who could only perform sedentary, unskilled exertional level work could perform Plaintiff's past relevant jobs. (R. 56).  The VE opined that such an individual could not perform any of Plaintiff's prior jobs; however, in the national economy, such an individual could perform sedentary, unskilled work as an estimator (9,400 positions regionally and 183,000 positions nationally) and information clerk (50,000 positions regionally and 1,000,000 positions nationally).  (R. 56-57).

Next, the ALJ inquired about a hypothetical individual who had the above-mentioned restrictions but was further limited to unskilled work as a result of pain and needed jobs that involved simple, routine tasks, short, simple instructions, little or no judgment with simple duties that could be learned on the job in a short time frame, and only simple work-related decisions with few work place changes.  (R. 57-58).  The VE opined that such an individual could perform sedentary, unskilled jobs, such as charge account clerk (6,200 positions regionally and 224,000 positions nationally); callout operator (1,600 positions regionally and 65,000 positions nationally) and order clerk in the food and beverage industry (10,000 positions regionally and 245,000).  (R. 58). The individual could not; however, perform the aforementioned jobs if he required a cane to ambulate at the job site and could walk only one hour, in thirty minute intervals, during an eight-hour day. (R. 58-59).  An individual could still perform work as a charge account clerk, callout operator and order clerk in the food and beverage industry if he required a cane to ambulate at the job site and

-6-

could walk up to one hour in an eight-hour day. (R. 59). The VE opined that, if the individual could

not stay focused on the task at hand for eighty percent of the workday, because of pain, he would be

totally precluded from working. (R. 60). Similarly an individual who required more than normal

breaks during the course of the workday, would be unable to sustain employment. (R. 60).

Furthermore, an individual who consistently would miss more than two days of work a month could

not sustain employment. *Id.* VE Verser confirmed that her testimony was consistent with the

Dictionary of Occupational Titles ("DOT"). (R. 60).

Plaintiff's counsel asked the VE to indicate the minimum amount of time that an individual

could remain unfocused on a task while performing unskilled work and maintain their employment.

(R. 61). VE Verser opined that an individual must focus at least eighty percent of the day when

performing either skilled or unskilled work in order to maintain their employment status. (R. 61).

### III.   THE ALJ's FINDINGS

After the February 28, 2012, administrative hearing, the ALJ issued the following relevant

findings:

> 3.   [Plaintiff] has the following severe impairments: lumbar
> degenerative disc disease, and status post vertebroplasties due
> to multiple compression fractures (20 C.F.R. 404.1520(c) and
> 416.920(c)).
>
> 4.   [Plaintiff] does not have an impairment or combination of
> impairments that meets or medically equals the severity of
> one of the listed impairments in 20 CFR Part 404, Subpart P,
> Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526,
> 416.920(d), 416.925 and 416.926).
>
> 5.   After careful consideration of the entire record, the
> undersigned finds that [Plaintiff] has the residual functional
> capacity to perform sedentary work as defined in 20 C.F.R.
> 404.1567(a) and 416.967(a) except he is limited to occasional

-7-

balancing, crouching, kneeling, stooping, and climbing ramps and stairs, but he should never crawl, or climb ropes, ladders, or scaffolds. [Plaintiff] should avoid hazardous machinery, unprotected heights, and jobs that require more than occasional use of foot pedals or foot controls, to include driving a motor vehicle, and exposure to extreme heat, cold, humidity, and wetness on more than an occasional basis. Due to pain and medication side-effects, [Plaintiff] is limited to unskilled work, entailing simple routine tasks, short simple instructions, little or no judgment, simple duties that can be learned on the job in a short time[-]frame, only simple work related decisions, and few workplace changes.

6.    [Plaintiff] is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.    [Plaintiff] was born on December 5, 1964 was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8.    [Plaintiff] has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.   Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.   [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 15, 2010, through the date of this decision (20 C.F.R. 404.1520 (g) and 416.920(g)).

(R. 17-23).

## IV.    DISCUSSION

A.    Standard of Judicial Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla of evidence but may be less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the Court should affirm the ALJ's findings of fact, if they are supported by substantial evidence even when the Court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). On the other hand, the Commissioner's legal conclusions are subject to plenary review. *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

In order to be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, App. 1; or (b) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S.

-9-

458, 460 (1983); 42 U.S.C. § 423 (d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Plaintiff must initially demonstrate that a medically determinable disability prevents him from returning to his past employment. *See Brown v. Bowen*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the Commissioner to prove that work does, in fact, exist in the national economy which Plaintiff is capable of performing given his age, education, and work experience. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.      Review of the Administrative Law Judge's Decision

The ALJ determined that Plaintiff was not disabled at any time through the date of his decision and, therefore, denied him disability benefits. (R. 19). Plaintiff asserts that the ALJ: (1) did not consider "new" evidence which supports a finding that his longstanding history of alcohol abuse was a severe impairment; (2) did not consider "new" evidence that supports a finding that he has spinal stenosis;[17] and (3) improperly assessed his residual functional capacity and found him not disabled. *Plaintiff's Brief and Statement of Issues in Support of Request for Review* ("Pl.'s Br.") at 2-4. The Commissioner requests that the court affirm her properly supported final ruling. *Defendant's Response to Request for Review of Plaintiff* ("Def.'s Br.") at 4-21.

1. New Evidence Does Not Warrant A Remand

*a. Plaintiff's alcohol abuse*[18]

Plaintiff contends that "new" evidence consisting of hospital and treatment records from

---

[17] Spinal stenosis is "narrowing of the lumbar spinal column that produces pressure on the nerve roots resulting in sciatica and a condition resembling intermittent claudication and that usually occurs in middle or old age." *See Medline Plus* available at http://www.merriam-webster.com /medlineplus/spinal%20stenosis. Accessed on April 18, 2014.

[18] The Court's review of Plaintiff's alcohol abuse claim is limited because he has failed to present the "new" evidence he relies upon with his filings or provide any explanation for his failure to present this evidence to the ALJ.

August 2011 through February 2012 which were not submitted to the ALJ for review demonstrate that his longstanding history of alcohol abuse was a severe impairment. Pl.'s Br. at 2, 4. The Commissioner argues that Plaintiff has failed to submit this "new" evidence to the Court for review and that he cannot establish "good cause" for his failure to present this evidence to the ALJ. Def.'s Br. at 4-7. This court finds that Plaintiff cannot establish "good cause" to warrant a remand.

Evidence presented for the first time to the district court on appeal cannot be considered for the purposes of determining whether or not an ALJ's decision is supported by substantial evidence. *Mathews v. Apfel*, 239 F.3d 589,592 (3d Cir. 2001). However, such evidence may warrant remand to the Commissioner under sentence six of 42 U.S.C. 405(g).[19]  *Id.*  The Third Circuit succinctly expressed its remand standard:

> [T]o support a "new evidence" remand, the evidence must first be "new" and not merely cumulative of what is already in the record. Second, the evidence must be "material;" it must be relevant and probative. Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally, the claimant must demonstrate good cause for not having incorporated the new evidence

---

[19]Sentence Six of § 405(g) provides, in full:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and *it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding*; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis added).

-11-

into the administrative record. (citations omitted).

*Szubak v. Sec. of Health and Human Servs.,* 745 F.2d 831, 833 (3d Cir. 1984). Plaintiff has failed to meet the three requirements necessary for remand under *Szubak.*

First, Plaintiff's "new" evidence regarding his long history of alcohol abuse was not submitted with his filings to the Court[20] although these treatment records were generated in August 2011 through February 2012, during the relevant period. At the time of the administrative hearing, Plaintiff was represented by counsel, Ms. Barbara A. Beringer, who could have submitted Plaintiff's "new" evidence to the ALJ for review.[21] *See* (R. 30-63, 96-97). During the hearing, Ms. Beringer advocated on behalf of Plaintiff to ensure that the ALJ received treatment records that were generated during this same period. At the conclusion of the administrative hearing, Ms. Beringer asked the ALJ to verify that he had included Dr. Edward J. Silverman's treatment notes, which were generated from April 4, 2011 through February 16, 2012, into the record; she did. *See* (R. 61-62). This identical process should have transpired regarding this alleged "new" evidence. The Court finds that the evidence that Plaintiff now seeks to rely upon for a sentence six is not "new." *See Szubak,* 745 F.2d at 833. Additionally, Plaintiff has not presented "good cause" or any reason for his failure to timely present this "new"evidence to the ALJ.[22] *See Mathews,* 239 F.3d at 595.

### b. Plaintiff's back impairment

Plaintiff submits as "new" evidence, treatment records which include an April 26, 2012 MRI report about his lumbar spine, that was submitted, initially, to the Appeals Council on July 12, 2012 . Pl.'s Br. at 2-3; *see also* (R. 525-538). This Court must now consider whether this "new" evidence

---

[20]The administrative record does not contain August 2011and February 2012 treatment notes and hospital records regarding Plaintiff's alcohol abuse that were not presented to the ALJ.

[21]Plaintiff is currently *pro se.*

[22]The Court further notes that Plaintiff would not be entitled to DIB or SSI benefits, if his alcoholism is deemed a contributing factor material to the finding of disability. *See* 20 C.F.R. §§ 404.1535, 416.935.

warrants a sentence-six remand pursuant to 42 U.S.C. § 405(g).

Plaintiff's "new" evidence does not warrant a remand. The April 26, 2012 lumbar spine MRI report is "new," to the extent that it was generated after the ALJ's written decision was issued on March 5, 2012. *See* (R. 535). However, Plaintiff must also demonstrate "good cause" for his delay in submitting this MRI report. Plaintiffs should generally be afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances; courts have been concerned that a remand for "new evidence" without some justification for not having offered the evidence at the initial hearing, could just be an end-run method of appealing an adverse ruling of the Commissioner. *See Szubak*, 745 F.2d at 834. This April 2012 MRI report did not exist prior to the March 5, 2012 ALJ decision, thus, it could not have been submitted sooner. *See* (R. 535).

However, Plaintiff cannot meet the third requirement, materiality, because this "new" evidence does not relate to the time period for which benefits were denied. *See Szubak*, 745 F.2d at 833. This MRI report was submitted almost two months after the ALJ rendered his March 5, 2012 decision. The record contains MRI reports of Plaintiff's lumbar spine which were generated during the relevant period. *See* (R. 257-263, 321-322,382-387, 394). These MRI reports show mild compression fractures of the lumbar spine and not "canal and foraminal stenosis" as indicated on the April 26, 2012 MRI report. Thus, the April 26, 2012 MRI report is likely evidence of "subsequent deterioration" of Plaintiff's back impairment. *See Mathews*, 239 F.3d at 594. Thus, Plaintiff cannot demonstrate that the April 26, 2012 MRI report is "material."[23]

---

[23] The April 26, 2012 MRI report indicates that Plaintiff's back impairment likely could now meet a listing. At the time the ALJ rendered his finding Plaintiff did not meet listing 1.04C, because he determined that the record lacked evidence that Plaintiff experienced "lumbar spinal stenosis with pseudoclaudication and an inability to ambulate effectively... ." However, this "new" MRI report indicates that Plaintiff currently has degenerative canal and foraminal stenosis at multiple levels. *See* (R. 535). Additionally, Dr. Edward Silverman completed a Medical Source Statement and opined that Plaintiff was medically required to use a cane to ambulate. *See* (R. 519). Thus, the April 26, 2012 MRI report, along with Dr. Silverman's February 16, 2012 Medical Source Statement could support a finding that Plaintiff currently meets listing 1.04C. However, Plaintiff must file a new application based on this recent deterioration.

### 2. The ALJ Properly Assessed Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ improperly found that he has the residual functional capacity to perform sedentary work and; hence, is not disabled. Pl.'s Br. at 3-4. Plaintiff further asserts that the ALJ rendered a flawed residual functional capacity, because he incorrectly found that Plaintiff's post-vertebroplasty[24] surgeries, were, generally successful and that he lacked credibility. Pl.'s Br. at 3-4. The ALJ's residual functional capacity assessment is supported.

*a. Plaintiff's vertebroplasty surgeries*

On June 16, 2011 and June 30, 2011, Dr. David Sacks performed surgeries on five of Plaintiff's fractured vertebrae. (R. 248-249, 253-254). On June 21, 2011, Plaintiff reported that the vertebroplasty surgeries had improved his back pain. (R. 346). On July 29, 2011, Plaintiff advised that he felt no back tenderness during his physical examination and, repeated that his back pain had improved. (R. 245). Plaintiff was subsequently discharged from Dr. Sacks medical care and recommended for epidural steroid injections. (R. 245). On August 8, August 22, and September 26, 2011, Plaintiff received a series of epidural steroid injections in his spine; following the injections he reported fifty percent improvement of his back pain. (R. 492-493, 507-508, 512). This evidence supports the ALJ's finding that Plaintiff's vertebroplasty surgeries were generally successful. Additionally, Plaintiff self-reported improvement following his surgeries thus, the ALJ's treatment of this evidence was proper.

*b. The ALJ's credibility findings are supported*

In evaluating Plaintiff's credibility, the ALJ complied with the appropriate Social Security Regulations ("SSR") and considered all of the relevant evidence in the record, including the medical

---

[24]Vertebroplasty is "a medical procedure for reducing pain caused by a vertebral compression fracture that involves injection of an acrylic cement into the body of the fractured vertebra for stabilization." *See Medline Plus* available at http://www.merriam-webster.com /medlineplus/vertebroplasty. Accessed on April 18, 2014.

evidence, the extent of his treatment, his activities of daily living and statements about his

symptoms. The ALJ evaluated Plaintiff's credibility as follows:

> The objective medical evidence reflects that while [Plaintiff] suffers
> from lumbar degenerative disc disease, and status post
> vertebroplasties due to multiple compression fractures, his ability to
> function was not limited to the degree alleged. The medical evidence
> documents that [Plaintiff] injured his back in January 2011, and
> underwent back surgery in June 2011, which was generally successful
> in relieving his symptoms. Medical records subsequent to the
> surgeries reflect that [Plaintiff] was able to walk with a normal gait,
> and a nonantalgic gait, and he was able to perform rapid alternating
> movements well bilaterally. Despite complaints of severe back pain,
> there have been significant periods of time which [Plaintiff] did not
> take any prescribed medications, and was noncompliant with
> professional recommendations and office visits. The evidence
> reflects that [Plaintiff] stopped working for reasons not related to his
> alleged impairments. [Plaintiff] testified that he was able to take care
> of his personal needs, albeit at a slower pace, shop, prepare simple
> meals, perform minimum household chores, and watch television.
> [Plaintiff's] subjective complaints are out of proportion to and not
> fully supported by the objective medical evidence. While [Plaintiff's]
> impairments are severe in that they have more than a minimal [effect]
> on his ability to function, they are not totally disabling and do not
> preclude the performance of all substantial gainful activity. The
> conservative nature of [Plaintiff's] medical care, and his admitted
> activities of daily living and functional capabilities serve to diminish
> his credibility regarding the frequency and severity of his symptoms
> and the extent of his functional limitations.

(R. 21). This Court finds that the ALJ adequately explained the basis for his credibility

determination in his decision. Furthermore, these conclusions are supported by substantial evidence.

The record indicates that, although Plaintiff injured his back on January 9, 2011, he did not

seek medical treatment until March 21, 2011. (R. 364-365). As previously discussed, the ALJ noted

that Plaintiff reported that his back pain improved following his vertebroplasty surgeries. *See* (R.

21-22) (citing (R. 245, 346)). Thus, Plaintiff's allegations of continuous disabling pain are not

supported. Additionally, the record supports the ALJ's finding that Plaintiff was noncompliant with his treatment regimen. In August and September of 2011, Drs. Teena Varghese and Steven Mortazavi administered epidural steroid injections in Plaintiff's back. (R. 492-493, 507-508, 512). On November 28, 2011, Plaintiff was discharged as their patient, because he failed to appear at three or more medical appointments. (R. 513-514). Plaintiff admits that he was noncompliant with his treatment, but attributes his absence to difficulty ambulating; he contends that he rescheduled multiple times. Pl.'s Br. at 3. However, the record does not reflect Plaintiff's request(s) to reschedule his missed medical appointments with Drs. Varghese and Mortazavi. Nevertheless, even assuming *ad arguendo* that Plaintiff has a valid reason for his noncompliance, the ALJ provided several other valid reasons for finding him less than fully credible.

The ALJ properly considered Plaintiff's activities of daily living when assessing Plaintiff's credibility, especially as regards to his pain testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(i); 416.929(c)(3)(i). Plaintiff testified that he was able to prepare his own meals, take care of his personal hygiene, grooming and perform light housework. (R. 39-40). The ALJ found that Plaintiff's activities of daily living did not indicate that he was fully disabled. *See* (R.21). The ALJ has offered substantial evidence to support his credibility finding; hence, it should not be disturbed.

## V.   CONCLUSION

After a thorough review of the record, this court finds that all of the Commissioner's findings are supported by substantial evidence. Accordingly, I make the following recommendation:

-16-

## RECOMMENDATION

AND NOW, this 29th day of April, 2014, I respectfully recommend that:

1.    The Report and Recommendation be APPROVED and ADOPTED;

2.    The Plaintiff's Request for Review be DENIED; and

3.    Judgment be ENTERED in favor of the Commissioner of the Social Security Administration.

It be so ORDERED.

*Carol S Wells*

CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE

ENTERED

APR 3 0 2014

CLERK OF COURT

-17-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

4/30/14

RE:   Steudel vs Colvin
      CA No.12-6397

## NOTICE

     Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Wells , on this date in the above captioned matter.  You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

     In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

     Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: _____

Joe Lavin   , Deputy Clerk

cc:  Courtroom Deputy to Judge Goldberg
     E. Steudel, A. Lynch, E. Giusti

civ623.frm
(11/07)